Please stand up and identify yourselves. I am calling this the feel good case. Good morning, your honors. Assistant State Attorney Alan Sparberg on behalf of the people of the state of Illinois. All right, we're giving you leeway since this seems to be more interesting and it seems everybody's got an opinion on this. I have an opinion that's probably separate than what's in the briefs, but I'll leave that till after I've heard your arguments. But I'm allowing you to go beyond your briefs since it appears there's more laws and things have occurred since you wrote the briefs. So with that in mind, you may proceed. Thank you, your honor. Your honors, I'd like to begin by sort of inverting my brief and starting with the proportionate penalties argument. Your honors, my client, the 45. You know that that's just for recording. It's not for amplification. So you speak up. Sorry, your honors. Your honors, the 45-year minimum sentence in this case and the 50-year sentence actually imposed in this case violated my client's rights under the proportionate penalties clause of Illinois' Constitution as applied to him. Now, as this court knows, a proportionate penalties clause violation exists when a sentence as applied to a particular person, quote, shocks the moral sense of the community as measured by, quote, the evolving standards of decency in society. And as we know, juvenile sentencing law has been evolving quite rapidly recently since Rural Court Graham, Miller, and Montgomery were decided. And this court's opinions, in particular, have been sort of at the forefront of some of that evolution. Now, those Supreme Court cases I just cited, just very briefly, as this court knows, indicated that developments in brain and social sciences show that the inherent characteristics of youth make minors, they have a diminished culpability when compared to adults and a heightened capacity for change. They're far more capable of rehabilitation. How do we know that Judge Wilson, who's a very experienced and capable jurist, longstanding, that he didn't take that into account when he's sentencing somebody who he knows how old the defendant is? Well, your honor, for one thing, as this court actually held in Yetto, where the court actually specifically indicated that it considered the defendant's youth, this court held that it could not have possibly considered the defendant's youth in the way that Miller requires, because Miller, Montgomery, and new sentencing laws hadn't come out yet. The court specifically held that the court couldn't be responsible for applying principles of law and science that hadn't yet been developed, and that was the case here. In this case, we have- I think I wrote that one. I think you did. You're right. Now, in this case, the judge did consider, since he gave him the minimum sentence. Judge, he did not get the minimum sentence. He got about five years over the minimum sentence. Well, he got the minimum on what he could authorize. Oh, you're right. No, that's not correct. He gave him the 20 and the 25 was statutory. The 20 and 25 was statutory for a minimum combined of 45 years. Michael, I got a 50-year sentence, so he got a few years over the minimum. Okay. So let's take that one step further. You know, I call this the feel-good case, because everybody's on the roll that, oh, we can-it's a juvenile. They're wonderful. We're supposed to reconsider. They just murder somebody, and that's okay. We're going to just let it go by, and we're going to give them a chance to get out soon. Well, how is a judge to determine this at this time of sentencing? There is no way, unless you've got a special way where I can take your blood and I know that you could be redeemed. Well, it is sort of a problem of how the legislature wrote the law, Your Honors, that judges- I'm saying it's backwards. It is backwards. There should be parole eligibility, Your Honors. In fact, right now in the legislature, which is showing this evolving standard of decency regarding juvenile sentencing in this case, right now in the legislature, there's a House Bill 2515, which is going through, indicating that, as it's written now, that homicide offenders who are under the age of 21 at the time of the offense now are eligible for parole after 20 years. Of course, that doesn't apply to my client, but it does show that there's an evolving standard of decency. Well, it may apply to your client if that other thing that they passed last year- As we stand now, you're right. It may apply if it actually gets into law, Your Honor, but as we stand now, it does not apply to my client. But that legislation, and also specifically the most recent juvenile legislation that I think you're referencing, indicates that where my client's minimum sentence was 45 in this case, it would be 20, because under that new juvenile sentencing law, judges have discretion whether or not to impose these mandatory firearm add-ons and are specifically required to consider the inherent characteristics of youth. The new legislation essentially codifies Miller into Illinois law and requires the courts to consider those factors and to consider them specifically as mitigating. And in this court in particular, Your Honors, found that, just to reiterate, that the Illinois Constitution actually provides a protection that's broader than the Eighth Amendment. It provides an additional protection. In Gibson, Your Honors, this court emphasized People v. Clements, which is an Illinois Supreme Court case that indicates that Illinois's constitutional provision, indicating that a person must be sentenced with the objective of restoring them to useful citizenship, provides a limitation on penalties that extends beyond what the Eighth Amendment permits. Therefore, this is not synonymous with the Eighth Amendment, therefore, because it provides additional protection. And doing so, Your Honors, this court found that a 52-year sentence for a juvenile, and with truth in sentencing, it was a 44-year sentence, violated the Proportion Penalties Clause because that high of a sentence did not allow for sufficient consideration of the various factors related to that individual minor's youth. So you're saying that there is pending a bill which would address that indirectly, which is probably what I'm also thinking, that if this case were remanded and the party was resentenced, he could be sentenced to the same sentence under the first 20 to 60. He could be given the same 50, but then he could be, according to what you're just telling me, a modification of what you say that legislation is. He could be considered halfway through that sentence to be considered for, to be reviewed for parole, either by, based on what you said, the legislation, or by IDOC, or a judge entering an order that he be reviewed after 25 of the 50 years to be considered for parole. Correct, Your Honor. I think that if you were to be resentenced, it's certainly possible. If he was, if he showed rehab. Correct, Your Honor. Right, if you were to be resentenced, it's certainly possible the court could decide that he deserves the exact same sentence. But in doing so, the court would have had to consider all these mitigating factors. He would be, somebody would be doing it 25 years later. Correct, Your Honor. Where he would have a history, instead of how we've got a backwards, as I call it, what did I call it? The feel-good, I think you said it right. Yeah, in other words, we have a Supreme Court that's doing it backwards, and an Illinois Supreme Court that's doing it backwards. So a poor judge is stuck there making a decision on what to do with somebody when he has no basis in reality other than a gangbanger who's sitting there and says, oh, I'm going to be good now. And then you put him in jail with the same fellow felons who are adults, and you put him in there with them, and that's his old gang home buddies. So he's sure going to be rehabbed. And now you've got our legislature cutting that budget, so now they're not even going to have the opportunity to be rehabbed because the legislature's cutting the money that they're passing legislation that says is going to help them. So it's all feel-good, which is not productive. I understand Your Honor's concern. However, the best a court can do, as the law stands right now, is to actually have a full sentencing hearing where these factors are actually considered and where these Miller factors are. No, I'm just making as good a record as I can to tell them they ought to look at things realistically. I understand that, Your Honor. As I was saying with relation to these evolving standards of decency, as we know, as I indicated before, right now if my client were convicted of the same crime right now, his minimum sentence would be 20 years. The judge would be required to consider all the various aspects of youth. You're assuming that the judge would not impose the 25. Right. What if the judge did? Well, the judge certainly would be welcome to and would be allowed to under the law. I say that his minimum would be 25 because it would be discretionary. So rather than being forced to impose nothing less than 45 years, the court could have discretion to consider this firearm act. Or if truth in sentencing did not apply to juveniles, it could still be the same 50 years, but he'd come up for parole after a certain amount of time. Sure. And he could show, yeah, he's changed. Yeah, exactly, Your Honor. Right. So unfortunately, Your Honor, for my client, he was sentenced under the old law where my 16-year-old client is required to be incarcerated for no fewer than 45 years. He got a 50-year sentence. He cannot be released. As someone who's entering being incarcerated at the age of 16, he cannot be released until he's 66 years old in the year 2049. And just from a personal perspective, Your Honor, the remainder of his teens, the entire decade of his 20s, 30s, 40s, 50s, into his 60s, a person who is exiting prison today, whoever said that same sentence, would have entered prison as a juvenile in 1967. It's an extremely harsh, extremely long sentence that, for the reasons I described in my briefing, which I can get into later if this court wants, that my client is unlikely to survive. But even if he does, he'll be introduced to a world that he's left basically as a teenager, as a man in his late 60s. He'll have no job skills. He'll have no employment options, particularly because he'll be a felon, but also because he'll be someone with no job experience when he's nearing 70 years old. He can't get Social Security because he's not working. His family and friends will all be either estranged or deceased. This is the feel-good side. Right. Well, not from my client. The other side of that is he's leaving one gang in prison to return to their homeboys outside of prison. Well, I'm going to disagree with that, Your Honor. I think, although, because Your Honor asked the question, it's not really alleviating our briefs, but I think there's numerous cases recently, especially from the Seventh Circuit, indicating that people who are in their late 60s are very unlikely to commit crimes. And it's also likely that he's likely to be extremely estranged from these people after he's been in prison for five decades. It also doesn't pay any attention to the victim. The victim's still dead. Correct, Your Honor. The victim is still dead. And our position isn't that the defendant shouldn't be punished. It's the way that they're punished. The issue here is not that he received a long sentence. It's that he received a long sentence without any consideration of his youth in violation of— Without discretion. Without any judicial discretion. Exactly, Your Honor. Again, as I said, if the court considers all of these various mitigating factors of his youth and considers the firearm add-on, whether or not he wants to impose it, and imposes the same sentence, we wouldn't really have much of an argument here. But the issue is the discretion that the court didn't have to give effect to these considerations of youth. And that's what this court held in Gibson. In Gibson, this court, although admittedly the facts in that case were different, this court recognized that there were various factors related to this person's youth that might have mitigated that person's sentence. And the court didn't have the power to give effect to those considerations because the mandatory minimum was so high. And the same thing is true here. The kind of sentence my client received where he's not exiting— where he'll be exiting prison in his late 60s is basically what Graham called it, you know, a denial of hope where good behavior and character improvement are immaterial. He has no incentive to reform his conduct. He has no incentive to rehabilitate. He's basically either doomed to either die in prison or to live a life of extreme poverty outside of prison with no job prospects, no housing prospects, no friends or family. So that gets back to truth in sentencing. Again, Your Honor, truth in sentencing with a drastically reduced minimum would resolve the problem. So you have this kid and the judge decides this kid has got—he hasn't apologized. It was a heinous crime. He had a gun. He's in a gang 50 years. And like Justice Smith said, he's in prison for 25 years. He reads.  He's good behavior, blah, blah, blah. He still can't get out. So if it weren't for truth in sentencing that says you can't come up for parole, he could at least go to the parole board and say, hey, you know, I really changed my ways. And they make those decisions all the day, every day. That's exactly right, Your Honor. The issue is, as it is in my law stands right now, there is not that—that parole option doesn't exist. And so the courts don't have—the courts can't impose a sentence knowing that there will be an evaluation later in this person's life. They have to make the decision now, which I agree with Justice Fitzgerald Smith, that's a difficult spot to put the judge in. But as the law stands now, the judge can and should consider all these various factors as best as they can in imposing a sentence. And perhaps the legislature will fix the problem down the road. But we're talking about proportionate penalties argument here. We're talking about the situation where Mike Lane has not only had this harsh sentence imposed on him where he's not—he's exiting prison nearing his 70 years old, but in doing so the court, as Justice Lavin alluded to, could not have considered the mediating factors of his youth as Miller required. In fact, while I think youth might have been mentioned by the defense counsel in this case, because Miller and Montgomery and all these cases and all these legislative changes haven't occurred yet, the judge could not have imposed them. And even worse, Your Honor, not only did the judge not consider Mike Lane's youth, the judge actually—the prosecutor made arguments of youth as actually being an aggravating factor in this case, which is improper, after Miller and Montgomery. Again, it's not the prosecutor's fault. They didn't know that at the time. But, for example, Your Honor, the prosecutor argued that the lengthy prison term in this case would be required as deterrence. But to quote this court from Nieto, we now know the defendant's sentence is not likely to deter anyone. And that's because, as we know from Miller and Montgomery, juveniles are impetuous and reckless and they make immature and rash decisions. So deterrence isn't a factor. The court—I'm sorry, the prosecutor also argued that my client, as a boy in his early teens, quote, chose to be a Black Peace known gang member. He chose that life. He had choices at age 14 and yet continued to commit crimes. But we know now, Your Honors, that from Miller and Montgomery, that this is not really much of a choice at all. My client—we know from Miller that minors do not have the ability to extricate themselves from their neighborhoods, from these crime-producing settings. We know from Miller that they're particularly vulnerable to negative influences and outside pressures. And, indeed, in this case, my client grew up and went to high school in Black Peace known neighborhoods. This neighborhood was also an extremely violent and extremely crime-ridden neighborhood, a poor neighborhood. And so these weren't really—we didn't have a choice. I mean, what made a choice to enter the Black Peace known gang? He was certainly strongly influenced by where he grew up, his family members. Oh, by the way, his brother was also a Black Peace known. So this was a—so his involvement in this gang, which the prosecutor argued as aggravating, was actually strongly mitigated by his youth. In addition, Your Honor, the prosecutor argued that my client, and later he was talking about the crime afterwards, was trying to brag to show that he's, quote, he's not a little kid. He's a tough guy. He's a shooter. Which is exactly the kind of conduct that one would expect of an immature, rash, decision-making minor. This is exactly what Miller is talking about. It actually illustrates that he was a minor and is therefore less culpable than an adult would be for the same decision. Indeed, Your Honors, just like—similar to Giftson, Your Honors, this was the product— this case was the product of rash decision-making. My client—this was a gang shooting. My client was in a gang with his fellow gang members. They were shown—some rival gang members threw gang signs at them, and the same rival gang members had recently beaten up one of his friends. He became upset, went with—again, always with these rival gang members, went and got a gun, shot at somebody who he thought was a rival gang member, and unfortunately it turned out to be someone who was not. You don't need to give us the history of the case. We know that. We were just interested in where you're going with the law. Okay, where we're going with the law, Your Honor, is basically the idea that imposing these harsh, multi-decade sentences on a minor without consideration of their youth violates the Proportionate Penalties Clause of Illinois Constitution, at least as applied to my client. I can point this point in particular to People v. Sanders, which is a case that came out after I filed my opening brief, but in a reply brief, and that was an Eighth Amendment challenge in a post-conviction case. But it's relevant to point out that in that case, they found that a prisoner's life expectancy is 64 years, and found specifically that because that person in that case, that 17-year-old who committed murder in that case, wouldn't get parole eligibility until they were 66, the court noted that that age of 66 would exceed his lifespan. My client also will not be released until he's 66, and we know that this is a proportionate— and what I'm talking about with proportionate penalties, that the Illinois Constitution provides greater protection than even a— We've already kind of heard where we think this case is going, so I don't think you need to go much further. All right, Your Honor. Well, I'll take your cue. Enlisted, may I ask if you have any further questions about this or about the Eighth Amendment challenge? If there wasn't anything proportionate about killing the victim, the victim's just dead. Correct, Your Honor. The victim has passed away. Yeah, we can't consider his juvenile age later on. We're just sarcastic. Okay, Your Honor. Are there any further questions about this issue of the Eighth Amendment challenge? No, thank you. Thank you, Your Honor. The jury will argue. And as I say, you get freedom because I know that you've had cases since where you've deviated somewhere from your original position. Thank you, Your Honor. I appreciate that. And if I could actually just start, I'd like to clarify one point about our brief. It's in relation to Argument C that appears in our brief, stating that even if this Court were to find that the defendant's sentence is unconstitutional, if it was remanded for resentencing, he would not be entitled to be resentenced under the new provision rendering these discretion. That was a mistake on our part in our brief. I wish to clarify that and say, obviously, as in Reyes, if this Court were to find that the defendant is entitled to a new sentence because his current sentence is unconstitutional, at any new sentencing hearing, the defendant would have a statutory right to elect to be sentenced under the current sentencing provisions. We can't contest that. We understand. So I just wanted to clarify that. That's why I gave you an idea of what we were already doing. Thank you. I appreciate that. However, in regards to the defendant's argument that his 50-year sentence violates the Illinois Constitution Proportion Penalties Clause, we do not agree. We do not stand away from our brief in any way. And what I feel is important to point out. I know you disagree with Gibson and Nieto. Why is this not different? Thank you. I was going to go to that. The important point that I wanted to make is what Counsel just argued. He gave an excellent policy argument as to why these sentences shouldn't be imposed upon youthful offenders. That was an argument that should be made to the legislature. The legislature, however, has not adapted that rule. I know Counsel is pointing to proposed legislation regarding youthful offenders in future scenario. That same legislation has been proposed every session for the last five or six sessions. It has never been adapted. So I'm not sure the significance of what some people believe is an appropriate policy. The key is under the Illinois Constitution, as this court found in Gibson, as this court found in Nieto, is that only in those extreme instances where a defendant's sentence so shocks the conscience, so shocks the conscience under the particular facts of the case, can a legislator's choice of a mandatory minimum sentencing be overcome. Only in those extreme cases. And notably, not a single case cited by Counsel, not a single case cited by the defendant, not a single case that I could find anywhere, has found that a 50-year sentence for an intentional murder violates the state constitutional provision. And it is important to remember that this is an intentional murder because on that day, a defendant walked up to the car that Jessica Bazan was sitting in and murdered her intentionally, directly, because he thought it was good for his gang members. And bragged about it later. Yes, and bragged about it later. And so we can't forget those facts because the facts, as demonstrated by this court's opinion in Gibson, by this court's opinion in Nieto, by the Leon Miller decision, the facts matter. The defendants' involvement matters. And so in Nieto, where this court struck down the defendant's aggregate sentence for murder and attempt murder of 78 years, this court specifically said that the defendant does not challenge the minimum sentence that he would have faced in that case of 51 years. And seemingly indicates that a 51-year sentence wouldn't violate the state constitution. This court in Gibson made a clear reference that the 52-year aggregate sentence for the two counts of attempt first-degree murder committed by that individual who had possibly the most tragic history of any defendant in the criminal justice system because he was wrongfully charged at seven years old for murder, when he was sentenced to 52 years for that, that violated it based upon those particular facts. This defendant is not similar to that scenario in any way, shape, or form. But even more importantly than that, the choice as to why we have a mandatory minimum sentence of 45 years for murders which are committed with a firearm where the defendant personally discharges and causes the murder of the victim was a policy choice made by the legislature to combat rampant gang crime. As we know, that rampant gang crime continues on to this day. And so that was the legislature's choice as to how we should have a minimum sentence. And what the Illinois Supreme Court said, even in Leon Miller, where they cited Peeple v. Taylor, the legislature has the power to establish mandatory minimums under our sentencing provision. And that only in those extreme cases can we overcome those mandatory minimums. But that's what the defendant is arguing here today, that the legislature doesn't have the power to set a mandatory minimum when it's involving a juvenile offender. And yes, of course, the Illinois Constitution applies in that regard, but it doesn't overcome the legislature's clear authority. And I would point to the Reyes case as proof of that. Because as you all know, in Peeple v. Reyes, the defendant was sentenced to an aggregate sentence of 97 years, minimum sentence of 97 years because it was 45 years for the murder with a firearm plus two counts of attempt murder with a firearm. The appellate court affirmed it, went up to the Illinois Supreme Court, and the Attorney General's Office properly conceded that under the Eighth Amendment, and I will stress that Reyes is exclusively an Eighth Amendment case, there's no reference to the Illinois Constitution in there, but the Attorney General's Office properly conceded that under the Eighth Amendment, a 97-year aggregate sentence amounts to a de facto life sentence under the Eighth Amendment. Clearly, they were correct. The Illinois Supreme Court agreed in a pro curiam opinion, knowing that because a 97-year is a mandatory de facto life sentence, by definition it violates the Eighth Amendment, remanded for resentencing to be considered where the defendant could be subject to the same discretionary sentencing under the new statute. But importantly, the court noted that the mandatory minimum the defendant would now face of 32 years, 20 years for the murder, plus six years for each attempt murder, is not a de facto life sentence, is nothing like a de facto life sentence, and doesn't violate the Constitution. And so, clearly, the Illinois Supreme Court has told us that mandatory minimums still apply and are lawfully applied when we're evolving juvenile offenders, just like the defendant here. So what the defendant has to do in this case is he has to establish that his minimum 45-year sentence or the 50-year sentence that was ultimately imposed, that his minimum 45-year sentence is so out of the realm of our understanding of the law and justice that it violates the Constitution. And he has to overcome that extraordinarily high burden of demonstrating that the statute is unconstitutional, even at an as-applied level. But he hasn't done that. What he's done is offered you policy arguments that even the legislature has rejected. And that's not how the system is supposed to work. As you pointed out, Your Honor, judges work backwards. We work backwards because we have a case and we're hoping that it's going to have an appropriate effect. The legislature gets to decide what the policies are that the courts apply, and they have to be followed in the absence of a finding of unconstitutionality. I want to also point out in terms of your question, Justice Paczynski, regarding truth in sentencing. It is true that since 1998 we have had truth in sentencing in Illinois for murder, that people have to serve 100% of their time. But it is not true that the defendant has no option of being released. Because while we don't have parole in Illinois, and that was eliminated in 1978, we have determined in sentencing set, we have clemency. And there is unrestricted ability to seek clemency from the governor. Any defendant can seek clemency under our Constitution. We have statutory provisions for allowing for it. What is supposed to occur if a defendant files for clemency is that the petition is supposed to be sent to the Prisoner Review Board, the same Prisoner Review Board that handles the parole cases for the defendants who were sentenced prior to 1978. And so the Prisoner Review Board hears those clemency petitions and makes a recommendation to the governor. And the governor, whatever it may be, does sometimes reduce sentences. So in my scenario then, if he was resentenced to 50 years, and after 25 years he petitioned for clemency, it would go back to the same if we did have a parole system. If in your scenario, if he were to file for clemency today even, it would be sent to the Prisoner Review Board, and they would review it. And they would have a hearing and decide whether or not he is an appropriate subject for reduction in sentencing or for release. I recognize that that's relief, but it's a bit of a stretch when we even had a case of clemency in the government. It was ironic. I agree. Although it's not the same governor anymore. Never will. Yes, we do live in Illinois. And I'm not saying that clemency is a readily available remedy. But it exists. It does exist, and it is a readily available opportunity to seek. There's no prohibitions on seeking it. And that, I think, is the key. I'm not saying that that would satisfy the Miller test as required, if this was a mandatory natural life sentence. Not in any way. What I am saying is that this isn't a defendant who has absolutely no opportunity to leave. Instead, what we have is we have policy choices made by the legislature, followed by the courts, adhered to by the courts in every single case. Because, again, as I said, there's not one case which has said that the 45-year mandatory minimum or a 50-year sentence for an intentional murder with a firearm amounts to a violation of the Constitution. This would be that first case. And as I said, the facts of Nieto, the facts of Gibson, the facts of Akins, which is another case which has been cited, are all different. Because all of those cases either involve some question of accountability, or they involve lesser offenses than first-degree murder, intentional first-degree murder. And the accountability was a key factor that this court stressed in Gibson. But as we all know, there is no question of accountability in this case. This was a conscious choice by this defendant to commit this murder. And so even if the defendant was to be resentenced, it is not outside the realm of possibility, even with the new sentencing of the discretionary firearm enhancements, he would be sentenced to, again, 50 years. Because this was a horrible murder. This was a defendant, we know from the record, who had some criminal background, even at his young age of 16. This was a defendant who was a proud member of the gang and was acting at what he perceived to be the interests of the gang. And so that's why, in this case, you cannot say that the 50-year sentence amounts to a violation of the Ormec Constitution. That's applied to him. It is fact-dependent. As defendant has specifically read up here and said, it is an as-applied challenge. As-applied challenges are, by definition, fact-dependent. And there's no way to get around those facts. And so it's for that reason we would ask this court to deny defendants, to reject defendants' arguments, and to affirm the denial of the post-conviction relief in this case. Thank you. Thank you. I'd like to just briefly address some of those points, if I may, Your Honors. Hosing Counsel just referenced to the fact that these facts in this case are different than those of apportionment penalties challenges in particular because my client was a proud member of a gang and because he has a criminal history. He was a member of a gang. I don't know if the record shows that he was somehow a proud member. But again, as I indicated earlier, his membership in a gang is far from being, if it's not a mitigating factor, it's certainly a mitigated factor in light of where he grew up and in light of the environment that he grew up in. But you have to admit, the record reflects that there was a lot of braggadocio demonstrated after this killing. I definitely agree. You hear about he shot a king in the face. Right. Yes. But I think that's, again, that's also a factor that's mitigated by his youth. The fact that he was bragging about it. In fact, the prosecutor even said that he was trying to show that he was a big shot. He wasn't a little kid anymore. That's exactly what a little kid does is try to show that they're a tough guy, that they're a big person. And also, the counsel also referenced his criminal history, which I'll remind the court is limited to a single juvenile adjudication for theft. It's hardly a harsh criminal history that shows that he's deserving of this kind of sentence. And as Montgomery shows us, Your Honor, Montgomery just reiterated that if you're going to impose a sentence where a person doesn't have a meaningful opportunity to obtain release, that minor has to be so irredeemably corrupt that that sentence would be appropriate. And that's just not the case here. And, Mr. Your Honor, I think what this, what the opposing counsel said about Gibson and Nieto, first of all, Nieto was an Eighth Amendment as-applied challenge. It wasn't a proportionate penalties challenge. But in Gibson, this court, I think part of the reason this court found a proportionate penalties challenge were because the particular facts related to this person's youth could not be given effect. And the same is true here. There are facts related to my client's youth. There are facts related to how the crime happened, where he grew up, and other pressures and influences on him that could not be given effect when the minimum sentence is 45 years. In addition, Your Honor, as I like to point out, we're not arguing that no mandatory minimum, just to clarify, we're not arguing that no mandatory minimum should apply to a juvenile, but that the mandatory minimum in this case is too long, such that it violates my client's proportionate penalties rights. And counsel also referred to Reyes. As I said, I'd like to point out that in Reyes, it included a block quote from a case from the Supreme Court of Wyoming called Bear Cloud that also favorably cited a case called Miller. In Bear Cloud, the court found that a 45-year parole eligibility violated Miller. In State Venal, they found a 52-year sentence violated Miller, and particularly said that a person's potential future release in their late 60s after a half-century of incarceration does not afford a meaningful opportunity to obtain release. And for those reasons, Your Honor, I respectfully request that this court either remand this case for a new sentencing hearing, or if the court finds that the facts aren't developed enough, it could remand for further post-conviction proceedings. I'd like to briefly remind the court we're only at the arguable constitutional claim stage here. Thank you. All right. Thank you. The briefs were very well done, and your arguments were very worthwhile. As I indicated before, I think we probably know where we're going with this, so we'll be arguing a little more of what you both just said. But thank you.